In view of the above considerations, the judgment of the common pleas court will be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and VICKERY, J., concur.

MORTON *v.* THOMAS, WARDEN.

(Decided March 24, 1928.)

*Messrs. Crabbe & Williams,* and *Mr. Thomas Chawke,* for petitioner.

*Mr. Edward C. Turner,* attorney general, *Mr. Herman E. Werner,* and *Mr. Joseph A. Godown,* for respondent.

ALLREAD, J.   This is a trial upon a writ of habeas corpus.

James Morton was received in the Ohio Penitentiary on January 20, 1923, under a sentence for robbery.   The minimum sentence was one year and the maximum fifteen.

After several continuances the Ohio Board of Clemency, on July 30, 1925, granted a release as follows:

"The Ohio Board of Clemency, Columbus, Ohio,
"July 30, 1925.
"Subject in re James Morton, No. 51560.
"James Morton, No. 51560, was received at the Ohio Penitentiary from Cuyahoga county January 20, 1923, to serve an indeterminate term of one to fifteen years for the crime of robbery.
"At a special meeting of the Ohio Board of Clemency held this day his case was given consideration and it was ordered that he be granted a conditional

release to Michigan authorities, effective when called for. Out of Ohio forever with no final release.

    "The Ohio Board of Clemency,
    "By Price Russell, Chairman,
     "Daniel W. Williams, Member."

On August 5, 1925, Morton was delivered by the warden of the Ohio Penitentiary to Thomas W. Creedon, a lieutenant of detectives of the police department of the city of Detroit, and was taken to Detroit where he was held in jail to answer for the crime of robbery committed in that state. December 12, 1925, the Ohio Board of Clemency again acted by the following order:

"The Ohio Board of Clemency, Columbus, Ohio,
  "December 12, 1925.
  "Subject: James Morton, No. 51560, Ohio
       Penitentiary.
  "The conditional release of James Morton, Serial No. 51560, Ohio Penitentiary to Michigan authorities on July 30, 1925, was granted by the Board of Clemency on representations as to certainty of conviction for another crime, which representations have proven to be unfounded, therefore said conditional release is hereby rescinded, the entire action taken on the above mentioned is held for naught and Morton's return to the Ohio Penitentiary is requested.

    "The Ohio Board of Clemency,
     "Price Russell, Chairman,
     "Dan W. Williams."

Acting under this order E. E. Klinger, field parole officer under Warden Thomas, went to Detroit, and, after conference with the Governor, Morton was

handcuffed to two Michigan officers, put into an automobile and driven to Columbus, where he was delivered to and received by the officials of the Ohio Penitentiary, and where he is now serving out the original sentence.

Morton challenges the validity of his return and service in the Ohio Penitentiary.

He contends that under the ''Out of Ohio forever'' clause in his release, he cannot be again returned to Ohio and compelled to serve in the Ohio Penitentiary under his original sentence. The questions therefore are: (1) Did the parole. officers have a right to grant conditional release? (2) Did they in fact do so?

At the time of Morton's sentence, the state of Ohio was operating under laws which require the convicting court to sentence convicts — such as Morton — to the Ohio Penitentiary to serve until released by the Ohio Board of Clemency. This was what is known as the ''Indeterminate Sentence Law.'' The Board of Clemency was authorized to grant paroles at any time after the minimum service had been served. The release or parole so authorized was in no sense a pardon. A release or parole, and especially if conditional, left the prisoner subject to such orders as the Board of Clemency might thereafter make.

Section 2160, General Code, provides:

''The board of managers [now Ohio Board of Clemency] shall provide for the conditional or absolute release of prisoners under a general sentence of imprisonment, and their arrest and return to custody within the penitentiary.''

Section 2169, General Code, provides:

"The Ohio Board of Administration shall establish rules and regulations by which a prisoner under sentence other than for treason or murder in the first or second degree, having served a minimum term provided by law for the crime for which he was convicted, or a prisoner for murder in the second degree, having served under such sentence ten full years, may be allowed to go upon parole outside the building and inclosure of the penitentiary. Full power to enforce such rules and regulations is hereby conferred upon the board, but the concurrence of every member shall be necessary for the parole of a prisoner. The board may designate geographical limits within and without the state, to which a paroled prisoner may be confined or may at any time enlarge or reduce such limits, by unanimous vote."

Section 2170, General Code, reads:

"All prisoners on parole shall remain in the legal custody and under control of the board of managers and subject to be taken back within the enclosure of the penitentiary. Such board may make and enforce rules and regulations with respect to the retaking and reimprisonment of convicts under parole. Its written order certified by its secretary shall be sufficient warrant for all officers named therein to return to actual custody a conditionally released or paroled prisoner; and such officers shall execute such orders as in cases of ordinary criminal process."

We, therefore, find that there may be conditional releases. Whatever might be the rule in cases where the Board of Clemency has issued an unconditional release, we are of opinion that the release in the present case is a conditional one. In the body

of the release it is stated that the release is conditional, and at the conclusion are the words "Out of Ohio forever with no final release." Had the release or parole ended with the words, "Out of Ohio forever," there would be some force in the claim as to its finality, but with the added "no final release," the conclusion is that the release is conditional. The release, therefore, being conditional, it was competent for the Board of Clemency to rescind its release or parole and provide for the retaking of the convict. Upon the rescission of the original release the warden has a right, if the defendant can be found within the state, to retake the convict and confine him in the Ohio Penitentiary.

The next question is as to the right to obtain a convict from another state where he is held as an arrested person to answer to a charge in that state. In respect to the prosecution in Michigan it may be stated that the defendant was brought into court on several occasions, and the case continued for absent witnesses, the last occasion being on the date on which Morton was finally brought into the state of Ohio. It appears under the arrangement between Klinger, the field parole officer, and the governor of Michigan, Morton was placed in the automobile, as heretofore stated, and driven to the Ohio state line and thence to Columbus. It is sufficient in this respect to say that the Ohio officer did not take the control of the automobile in which the convict was, or of the convict, until he reached the state line of Ohio, but inasmuch as the Ohio field officer accompanied the state officers from Detroit, we prefer to consider that question. We may assume that the Ohio officer was in some way responsible for bring-

ing Morton to the Ohio state line, and thence returning him to the Ohio Penitentiary. There is no comity between the states for the return of an indicted or convicted person, consequently so long as Morton remained in Michigan he had a right to claim that state as an asylum. The officers in Michigan who were prosecuting him, might, so long as Morton remained in Michigan, have had a right to demand that he be held in Michigan for trial. A writ of *habeas corpus* therefore might be available to Michigan to test the right of the state of Ohio to Morton, but, when the officers of the state of Michigan, even at the suggestion of the officer of the state of Ohio, bring Morton to the state of Ohio, the question is not competent for Morton to raise as against the state of Ohio. *Mahon* v. *Justice,* 127 U. S., 700, 8 S. Ct., 1204, 32 L. Ed., 283; *Pettibone* v. *Nichols,* 203 U. S., 192, 27 S. Ct., 111, 51 L. Ed., 148, 7 Ann. Cas., 1047.

When, therefore, the convict was transferred across the state line by the Michigan authorities, and delivered to the state of Ohio by the Michigan officers, he was within the jurisdiction of Ohio and subject to transfer to the Ohio Penitentiary.

Morton claims that at the time of his first release in Ohio he was willing to accept the conditional pardon, and agreed to go to Michigan and be tried there on the Michigan charge. Nevertheless his pardon in Ohio was a conditional one, and, notwithstanding the fact that he was transferred out of the state, he still was subject to the jurisdiction of the Ohio state officers, and subject to the parole laws of the state of Ohio and to the right of the Board of Clemency to retake him at any time. Morton having

been brought into the state of Ohio, and the jurisdiction of the officers of the state of Ohio being asserted against him, his retention in the Ohio Penitentiary is according to the law of the state of Ohio, and his release upon the writ of *habeas corpus* must therefore be refused.

*Writ denied.*

FERNEDING and KUNKLE, JJ., concur.